# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| AT&T MOBILITY LLC, | * |  |
| Plaintiff | * |  |
| v. | * | CIVIL NO. JKB-16-3107 |
| TIPTONS' INC., | * |  |
| Defendant. | * |  |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Plaintiff AT&T Mobility LLC, a Georgia company, brings this action against Defendant Tiptons' Inc., a Maryland company, alleging negligence and seeking compensatory damages associated with the collapse of a communications tower and resulting damage to Plaintiff's communications equipment. Before the Court are the parties' cross motions for partial summary judgment. A hearing is not necessary to resolve the matter. *See* Local Rule 105.6 (D. Md. 2016). For the reasons set forth in this memorandum, Defendant's Motion (ECF No. 33) will be denied by accompanying order. Plaintiff's Motion (ECF No. 35) will be granted in part and denied without prejudice in part by accompanying order, in accordance with the principles set forth below.

### I. *Background*

In 2002, Plaintiff AT&T Mobility LLC entered into a contract with the owner of a communications tower ("Tower") in Frederick County, Maryland, and began using space on the Tower to house and operate telecommunications equipment ("Equipment"). (Pl.'s Mot. Partial Summ. J. Ex. C, Van Riper Dep. 19:22, ECF No. 35-5; Def.'s Mot. Partial Summ. J., Ex. 72,

License for Telecommunications Equipment, hereinafter "License," ECF No. 33-6.) The contract, titled as a "License," did not permit Plaintiff access to or control over most of the Tower, nor did it grant Plaintiff any ownership of the Tower itself. (License ¶ 1.) Instead, the License allowed Plaintiff, for a monthly fee, to place Equipment in a specific place on the Tower and to have access to a "footprint" at the base of the Tower. (*Id.* ¶¶ 1-2.) Plaintiff is required under the License to notify the Tower owner of conditions on the Tower that would require maintenance or repair (*id.* ¶ 10), but the License provides that Plaintiff may not make any modification to its Equipment without the permission of the Tower owner. (*Id.* ¶ 7(c).) In the event of a fire or casualty, the License provides that the Tower owner will be responsible for repairing the Tower to its prior condition, but the Tower owner is specifically not liable for any damages stemming from the Plaintiff's inability to use the Tower in the interim, nor is the Tower owner liable for any damage to Plaintiff's own equipment. (*Id.* ¶ 13(a).) Plaintiff has maintained the License to this day and continues to make monthly payments to the owner. (Van Riper Dep. 41:21-22; 99:14-17.)

On July 13, 2015, the Tower collapsed. (First Am. Compl. ¶ 6, ECF No. 24; Pl.'s Mot. Partial Summ. J. Ex. E, Tiptons' Answer to AT&T's Interrog. No. 7, ECF No. 35-7.) Plaintiff alleges that the cause of the collapse was the negligence of Defendant Tiptons' Inc., a Maryland company that was engaged in logging operations on the same property where the Tower was situated. (First Am. Compl. ¶¶ 1, 8; Tiptons' Answer to AT&T's Interrog. No. 1.)

As a result of the Tower's collapse, Plaintiff has suffered a loss. The precise nature of that loss is in part the subject of the cross motions for summary judgment before the Court today, but the basic nature of Plaintiff's loss can be simply described in two parts. First, Plaintiff's Equipment was damaged. (First Am. Compl. ¶ 13.) Second, Plaintiff lost the utility of that

Equipment, i.e., Plaintiff lost the telecommunications coverage that the Equipment provided. (*See* Pl.'s Mot. Partial Summ. J. Supp. Mem. 3, ECF No. 35-1.) In order to compensate for the first loss, Plaintiff purchased new Equipment. (*Id.* Ex. A, Van Riper Aff. ¶ 6, ECF No. 35-3; Ex. J, AT&T Summary Chart of Damages, ECF No. 35-12.) According to the Plaintiff, it is more economical to purchase new Equipment than to repair damaged Equipment because when it repairs damaged Equipment, it must also test and certify that Equipment, which is costly. (Van Riper Dep. 104:18-105:2.) In order to compensate for the second loss, Plaintiff erected its own temporary tower (the "Temporary Tower") and installed the new Equipment on the Temporary Tower. (Van Riper Aff. ¶ 6; Van Riper Dep. 109:9-23.) According to the Plaintiff, this is the most economical and the fastest way of restoring service to the affected area. (Van Riper Dep. 109:18-21, 115:5-10.)

In order to be compensated for all of its loss, Plaintiff has brought the instant action, alleging Defendant was negligent and asking for damages. Specifically, Plaintiff is asking for, at least, the cost (1) of purchasing the new Equipment ("Equipment Costs"), (2) to erect the Temporary Tower, to install the new Equipment on the Temporary Tower, and to get that Equipment into service ("Temporary Tower Costs"), and (3) the cost to move the Equipment back to the original Tower once it has been repaired or replaced ("Relocation Costs"). (*See* Pl.'s Mot. Partial Summ. J. Supp. Mem. 25.)

Before the Court today are the parties' cross-motions for summary judgment. Defendant moves the Court for judgment on the following issues of law: that Plaintiff is not entitled to "loss of use" damages stemming from Plaintiff's inability to use the Tower, that Plaintiff cannot recover damages in an amount beyond what it could recover from the Tower owner under the License, and that Plaintiff cannot recover both the cost of moving the Equipment to the

Temporary Tower and the Relocation Costs because this would constitute a "double recovery." (Def.'s Mot. Partial Summ. J.) Plaintiff has responded to Defendant's Motion and Plaintiff also moves the Court for judgment on the following issues of law: that, "if [Plaintiff] prevails on liability . . . upon sufficient evidence of damages, [Plaintiff] is entitled to recover (in an amount to be determined by the jury)" the Equipment Costs, Temporary Tower Costs, and Relocation Costs, and that Plaintiff is not contributorily negligent "as alleged by [Defendant]." (Pl.'s Mot. Partial Summ. J.; Def.'s Answer to Pl.'s First Am. Compl. ¶ 18.a, ECF No. 32 (alleging Plaintiff's contributory negligence).)

## II. *Standard of Review*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id*. at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by

affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1).

## III. *Analysis*

The competing claims surrounding the propriety of damages in this case are reminiscent of a torts hypothetical in a first year law school class. And, just as in an introductory torts class, it is helpful to start with some of the basic premises of the law of damages before moving onto the parties' specific claims. The Plaintiff is asking for compensatory damages, and "[c]ompensatory damages awards attempt to make the plaintiff whole again by monetary compensation." *Exxon Mobil Corp. v. Albright*, 71 A.3d 30, 97 (Md. 2013) (quotations omitted). Such damage awards aim to place a plaintiff in the same position he would have been in without the defendant's negligent conduct. *See* Restatement (Second) of Torts § 903, cmt. a. (1979). For a case involving damage to a tangible thing, i.e., a "chattel," the measure of such damages is generally simple: the fair market value of the chattel prior to the damage, or the cost of repair, whichever is cheaper. *See Taylor v. King*, 213 A.2d 504, 507 (Md. 1965) (referring to compensation for injury to a motor vehicle); Maryland Law Encyclopedia, 8 M.L.E. Damages § 68. This is because chattels are generally easily replaceable – if a car is damaged in an accident, then its owner can be "made whole" by having the car fixed, or if the car is "totaled," i.e., repairs will cost more than what the car is worth, the owner can be made whole by buying the same (or equivalent) car.

Another consequence of the fact that chattels are often easily replaceable is that damages for "loss of use" of the chattel would often make a plaintiff better off than before the negligent conduct occurred. If a plaintiff can have his car replaced, the plaintiff does not also suffer from his inability to use that car. This is part of the reason why, generally, "when [a chattel] is totally

destroyed, and there is recovery for its full value, there can be no recovery for loss of use." *Weishaar v. Canestrale*, 217 A.2d 525, 534 (Md. 1966) (citing *Barnes v. United Rys. & Elec. Co.*, 116 A. 855 (Md. 1922)). Another reason loss of use damages are the exception and not the rule is that damages, whether for "loss of use" or any other deprivation, may not be unduly speculative. *See Albright*, 71 A.3d at 97 (citing *McCalister v. Carl*, 197 A.2d 140, 145 (Md. 1964)). If a plaintiff's family heirloom is destroyed by an act of negligence, the plaintiff may suffer some "loss" tied to his inability to "use" that chattel, but putting a dollar figure on such a loss is nearly impossible.

Loss of use damages are not, however, universally disfavored or categorically banned. *See Weishaar*, 241 A.2d at 530-31. *Weishaar v. Canestrale*, a case cited favorably by both parties here, is a good example of when a plaintiff may properly recover for loss of use without recovering a windfall. In *Weishaar*, a commercial driver had parked his truck on the shoulder of a highway when another vehicle hit and seriously damaged his truck. *Id.* at 527. The truck driver immediately "ordered a replacement for the truck," but because it was not a common vehicle, "the body had to be specially fabricated for his use [and] delivery was not accomplished until five weeks later." *Id.* at 530. In order to keep up his deliveries, which he had already contracted to perform, he "was obliged to hire a truck." *Id.* After a finding in his favor on liability, the truck driver was allowed to recover damages not only for the value of the repairs to his truck, but also for the rental costs associated with hiring the alternative truck for five weeks. *Id.* The defendant appealed, arguing that the basic law of damages applied – that when "there is a recovery for . . . [the] full value [of a chattel], there can be no recovery for loss of use." *Id.* (citing *Barnes v. United Rys. & Electric Co.*, 116 A. 855 (Md. 1922)). The Court of Appeals of Maryland affirmed the award, noting that the above stated rule is a "convenient rule of thumb,"

but one that must give way to the "general principle" that "[d]amages are supposed to compensate the injured person for the wrong which has been done to him." *Id.* at 530-31. The truck driver suffered more than the monetary value of the loss of his truck; he also had to pay for a substitute truck while the replacement truck was being fabricated. Furthermore, the plaintiff "removed the possibility of speculation by careful proof which showed not only the possibility of profitable use [of the chattel] but an actual contract for that use." *Id.*

To put the law somewhat more succinctly, in an action for negligence "[a]s in other tort actions, additional damages adequate to compensate an owner for other injurious consequences which result in a loss greater than the diminished or market value of the chattel at the time of the [tort] may be allowed unless such claimed damages are so speculative as to create a danger of injustice to the opposite party." *Staub v. Staub*, 376 A.2d 1129, 1133 (Md. Ct. Spec. App. 1977). With these basic principles in mind, the Court now turns to the parties' specific arguments, beginning with the Defendant's motion and then proceeding to the Plaintiff's motion.

### a. *Defendant's Motion for Summary Judgment*

Although the Defendant says in its motion that "[t]here is no genuine dispute as to any material fact in this case and Defendant is entitled to judgment as a matter of law," it titles its motion as a Motion for Partial Summary Judgment, and the substance of its motion and its memorandum and reply implicitly concede that there are *some* issues of material fact because it fails to substantively address numerous issues, such as, for example, its own liability. Therefore, the Court will not address Defendant's possible contention that it is entitled to complete summary judgment. Instead, the Court will address the narrower claims set forth in the Defendant's motion: that Plaintiff may not recover for "loss of use" damages because Plaintiff

did not own the Tower, that Plaintiff is limited to remedies available under the License, and that Plaintiff is seeking a double recovery.

### i. *Loss of Use*

Defendant argues that, as a matter of law, Plaintiff is barred from recovering against Defendant any more than the cost of the Plaintiff's damaged equipment because Plaintiff did not own the Tower. (*See* Def.'s Mot. Partial Summ. J. Supp. Mem. 4-5.) In other words, Defendant argues that Plaintiff cannot recover for loss of use damages for its inability to use a "tower it admits it never owned." (*Id.* 5.) This argument fails for two reasons: the Plaintiff is not seeking damages for its inability to use the entire Tower, and ownership is not required for a loss of use claim.

Plaintiff is not seeking to recover damages for its inability to use the entire Tower; it is seeking to recover damages for its inability to use its own equipment on a particular part of the Tower. (*See* Pl.'s Mot. Partial Summ. J. Supp. Mem. 10.) The License does not permit Plaintiff to do whatever it wishes with the Tower. (License ¶ 1.) Therefore, if Plaintiff were in fact seeking to recover for its inability to use parts of the Tower that it had no right to use, the Defendant would be right to point out that such damages would be at best far too speculative to be recoverable. Plaintiff, however, is only seeking to recover for its inability to use that which it had a right to use: its own equipment and the areas of the Tower to which it had access. Defendant maintains that Plaintiff cannot recover for its inability to use even this part of the Tower because Plaintiff only possesses a "license" to use the property.

Formal ownership, however, is not required for a plaintiff to recover loss of use damages. *See* 22 Am. Jur. 2d. Damages § 305 ("Damages may be awarded for loss of use so long as the plaintiff had a possessory interest in the property even if he or she did not own it."). To be sure,

neither party has shown the Court a case from Maryland or this District or Circuit in which a Plaintiff was able to recover loss of use damages for property that he did not own. But neither party has shown the Court such a case that found ownership to be an essential predicate to loss of use either. Further, persuasive authority from other jurisdictions has found loss of use damages recoverable when no formal ownership exists. *See, e.g.*, *Smith v. United States*, 113 F. Supp. 131, 133-34 (D. Del. 1953) (noting that while "grave problems of proof of causal connection, damages, and other elements of a successful case may confront a plaintiff at trial" when he claims loss of use for property he does not own, such a plaintiff is legally capable of pleading such a case); *Mauney v. Carroll*, 795 S.E.2d 239, 242 (N.C. Ct. App. 2016) (Plaintiff owned an auto *lease* and was able to seek loss of use damages for the time that the car was being repaired). Beyond the holdings of these other courts, the formality that Defendant asks for here would undermine the general principles of damages. "It was Plaintiff who was deprived of his right to use the Porsche while it was being repaired. Lessor, the title owner, did not suffer any loss of use damage during this period because it had no right to use the Porsche for the duration of the Plaintiff's lease." *Mauney*, 795 S.E.2d at 242. Replace "Porsche" with "Equipment," and "Lessor" with "Tower Owner," and that statement perfectly applies to the case before the Court. Ultimately, so long as Plaintiff can show a non-speculative loss resulting from its deprivation, it should be able to recover for that loss.

Defendant makes much of the fact that Plaintiff's contract with the Tower Owner is titled a "License," and that Plaintiff can only point to cases where someone with a *lease* was able to recover for loss of use. The title of the contract here, however, is irrelevant to the question of whether Plaintiff can seek damages for loss of use. First, from the perspective of judging the possessory interest of the Plaintiff, the contract at issue is functionally akin to a lease. Defendant

9

is correct that, as a matter of strict property law, a "license" is something less than a lease, in that a license only permits its holder to enter another's land for a specific purpose and is freely revocable by the owner for any reason at any time. *See Delauter v. Shafer*, 822 A.2d 423 (Md. 2003); *Rau v. Collins*, 891 A.2d 1175, 1184 (Md. Ct. Spec. App. 2006). However, the "License" at issue here provides for payment of a security deposit, monthly rent (deemed a "License fee"), the term of the License, the mechanism for renewal, and even a provision that requires the "Licensee" to pay utilities. (License ¶¶ 2, 3, 6.) The Plaintiff is entitled to exclusively possess its portion of the Tower, except that the Tower Owner has "access to the Equipment Space for the purpose of operating, maintaining, repairing or improving the Tower." (*Id.* ¶ 2.) This is functionally indistinguishable from a commercial lease that allows a tenant to use space in a building for a particular purpose subject to the owner's right to enter for specific purposes. *See Delauter*, 822 A.2d at 427 (stating that "[w]hether the contract is a lease or a license depends upon the intention of the parties," and finding that because there was no written agreement and no payment of rent, a license and not a lease had been formed).

Second, even if the Court agreed with Defendant's interpretation of the contract as a "mere license," that would not necessarily mean Plaintiff could not recover for loss of use. Rather, it would mean that Plaintiff would face a greater challenge when it comes to proving that its harm is not speculative. That is, if Plaintiff's "right" to use the Tower was so tenuous that it could be revoked for any reason at any time, perhaps Plaintiff's claim that it was harmed because it could not use the Tower at any given time would be too speculative, whereas a formal leasehold, or title ownership, might more clearly show a right to use that property in the future, and thus a claim of deprivation would not be as speculative. But regardless of the form of ownership or control, a plaintiff could still bring a loss of use claim, provided that he was able to

sufficiently prove that the harm was not too speculative. In short, Defendant attempts to do categorically what it must do factually – Plaintiff is not legally barred from recovering because of the nature of its agreement with the Tower owner, but that does not foreclose the possibility that Plaintiff's damages *calculation* is exaggerated.

### ii. *Recovery under the License*

Defendant further relies on the License to argue that Plaintiff cannot seek any recovery from the Defendant beyond what Plaintiff could recover from the Tower owner under the License. The License provides that, in the event of "damage by fire or other casualty," the Tower owner will repair the Tower, but will not reimburse the Plaintiff for damage to its equipment or costs associated with the delay in repair or harm to Plaintiff's business. (License ¶ 13(a).) Defendant argues that because Plaintiff would be unable to recover for, e.g., the Temporary Tower costs under the License, Plaintiff cannot recover for the Temporary Tower costs in this action. Defendant's assertion that Plaintiff "lack[s] a remedy in its communications license to obtain a temporary replacement tower" is questionable. (*See* Def.'s Mot. Partial Summ. J. Supp. Mem. 7; *see* License ¶ 13(a) (Licensee cannot recover against the Tower owner for costs associated with damage to its equipment, "except to the extent and for the time that the Tower or the Equipment Space are thereby rendered unusable for Licensee's intended purpose.").) But the Court today does not need to define the exact parameters of the contract that Plaintiff entered into with the Tower owner. Defendant's argument that Plaintiff is limited in its recovery *against Defendant* because it is limited in its recovery *against the Tower owner* fails as a matter of law.

As explained above, the law does not permit Plaintiff to recover compensation that would place it in a better position than *it would have been in without Defendant's negligence*.

11

Assuming that the Defendant's negligence was the cause of the Tower's collapse, then if Defendant had not been negligent, Plaintiff would not have spent the money it did erecting the Temporary Tower and moving the Equipment. If Plaintiff's contract with the Tower owner would not put Plaintiff in that position, then that may be an undesirable contract, but it has nothing to do with the damages allegedly caused by the Defendant from *its* breach of *its* duty to the Plaintiff. Allowing Plaintiff to recover more from Defendant than it could from the Tower owner may put it in a better position than if it had relied on its contract and recovered against the Tower owner, but it puts it in the *same* position as it would have held in the absence of Defendant's conduct – and the latter is the measure of damages in a lawsuit against the Defendant for negligence.[1]

### iii. *Double Recovery*

Finally, Defendant argues that Plaintiff cannot recover both the Temporary Tower Costs and the Replacement Costs in full because compensation for moving the Equipment to the temporary tower and back to the original Tower once it is repaired would constitute a "double recovery." Maryland courts do follow the fundamental rule against double recovery, which "precludes a party from double recovery for a single injury." *Kramer v. Emche*, 494 A.2d 225, 231 (Md. Ct. Spec. App. 1985). But Defendant's argument here proves far too much. If a person's office is flooded due to the negligence of his upstairs neighbor, would that person be able to recover the cost of moving his equipment out of the office to a temporary location, but not the cost of moving it back to the office when it is dry? Surely not. Defendant's proposed interpretation of the rule against double recovery would mean that the plaintiff in *Weishaar* could

---

[1] The Defendant cites to *Atkinson Warehousing and Distribution, Inc. v. Ecolab, Inc.*, 99 F. Supp. 2d 665 (D. Md. 2000), for the proposition that "[c]ompensation cannot place [a] plaintiff in a better position than the contract would otherwise provide." (Def.'s Mot. Partial Summ. J. Supp. Mem. 8.) *Atkinson Warehousing* was a *breach of contract* case *between two parties to a contract*. Of course, when a party seeks to recover for breach of contract, that party cannot recover more than would be due to it under that contract. That is not the issue here.

recover for the costs of renting a comparable truck, perhaps in perpetuity, but could not also recover for the cost of repairing his own truck. At bottom, Defendant mischaracterizes Plaintiff's harm. Plaintiff's harm is not that it has to move some Equipment. In that event, recovering for moving the same Equipment twice may be a "double recovery." Rather, Plaintiff's harm is its loss of use of its Equipment, and to compensate for that harm it believes that it must relocate the Equipment to a temporary tower and back to the permanent tower. While it may involve moving the Equipment twice, Plaintiff is only seeking to be compensated once for one harm.

### b. *Plaintiff's Motion for Summary Judgment*

Plaintiff, in its motion, seeks summary judgment on two issues. First, on the flip side of the coin from Defendant's motion, Plaintiff asks this Court to hold that it is entitled to the Equipment Costs, Temporary Tower Costs, and Relocation Costs as a matter of law, if they are able to prove liability and amount. Second, Plaintiff asks this Court to hold that it is not contributorily negligent as a matter of law. The Court will address each request in turn.

### i. *Entitlement to Categories of Damages*

Plaintiff asks that the Court enter an order stating that "if [Plaintiff] prevails on liability, then Plaintiff, upon providing sufficient evidence as to damages, is entitled to recover (in an amount to be determined by the jury)" the Equipment Costs, Temporary Tower Costs, and Relocation Costs.

Plaintiff is entitled to those damages that are reasonably calculated to make it whole. *See Albright*, 71 A.3d at 97. Therefore, if Plaintiff can prove by a preponderance of the evidence at trial that Defendant is liable for the harm and that Plaintiff's equipment could not have been repaired for less cost than its full fair market value, then Plaintiff can recover the cost of

procuring new Equipment. *See Taylor*, 213 A.2d at 507. If Plaintiff can prove by a preponderance of the evidence at trial that erecting the Temporary Tower and placing the Equipment on it was a necessary substitute for the Equipment's original position on the original Tower, then Plaintiff can recover the costs of erecting the Temporary Tower and relocating Equipment there. *See Weishaar*, 217 A.2d at 530 (quoting Restatement (First) of Torts § 927 (1939)) ("[D]amages can properly include an amount for expenses in procuring a necessary substitute for the value of the use of a substitute until a replacement of the subject matter can be made."). If Plaintiff can prove by a preponderance of the evidence at trial that relocation to the Temporary Tower was a "necessary substitute," then Plaintiff can recover the costs of relocating the Equipment back to the original Tower.

Therefore, Plaintiff is not barred, as a matter of law, from attempting to recover the Equipment Costs, Temporary Tower Costs, or Relocation Costs. But to grant the Plaintiff's motion for summary judgment is to issue a judgment on the facts under the guise of a judgment on the law, something the Court will not do. For example, to decide that, based on the record before the Court today, Plaintiff is entitled to the Temporary Tower or Replacement Costs if liability is shown, is to decide that a replacement tower was a "necessary substitute." It may be, but the Court declines the invitation to so hold. Defendant is still free to present evidence at trial regarding, for instance, the market value of the Equipment, the propriety of erecting the Temporary Tower, whether the "Temporary" Tower is in fact temporary and thus the propriety of relocating the equipment back to the original Tower, or more besides. Therefore, the Court will deny without prejudice the Plaintiff's motion with respect to Paragraph one (ECF No. 35, p. 1, ¶ 1).

### ii. *Contributory Negligence*

Finally, Plaintiff asks the Court to hold that it was not contributorily negligent as a matter of law. Defendant alleged in its Answer to Plaintiff's First Amended Complaint (ECF No. 32) that Plaintiff was contributorily negligent. Specifically, Defendant alleged that "Plaintiff failed to maintain the tower, guide wires, and related equipment in good condition and a careful and reasonable manner," that "Plaintiff failed to protect the guide wire mooring post by chain link fence or other protective enclosure," and that "Plaintiff failed to clear the area surrounding the guide wire and its mooring post of overgrowth or to mark or post the location of guide wire [sic] and its mooring post so as to notify others of its location." (Ans. First Am. Compl. ¶ 18.a.) Plaintiff, in its Motion, specifically asks that the Court find that, "as a matter of law, [it] was not contributorily negligent, *as alleged by Tiptons*." (Pl.'s Mot. Partial Summ. J. ¶ 2 (emphasis added).) Insofar as the Plaintiff's Motion requests that the Court find Plaintiff was not contributorily negligent specifically for the reasons that Defendant alleged in its complaint, the Court will grant the motion. The Court cannot, however, hold as a matter of law, that Plaintiff is not contributorily negligent in any way.

"Contributory negligence is the neglect of the duty imposed upon all men to observe ordinary care for their own safety." *Campfield v. Crowther*, 249 A.2d 168, 172 (Md. 1969). Contributory negligence is not the mirror image of a defendant's primary negligence. *See Menish v. Polinger Co.*, 356 A.2d 233, 235-36 (Md. 1976). "Although 'primary negligence and contributory negligence are often thought of as simply opposite sides of the same coin,' there is a significant difference between them; while 'primary negligence involves a breach of duty owed to another, contributory negligence involves a failure to take proper precautions for one's own safety.'" *Id.* (quoting *Baltimore Cty. v. State, Use of Keenan*, 193 A.2d 30, 37 (Md. 1963)). The

question of contributory negligence is often left to the jury, but can be settled by a court before trial. *See Campfield*, 249 A.2d at 172 (quoting *Wiggins v. State, Use of Collins*, 192 A.2d 515, 520-21 (1963)).

The positions of the parties on this issue can be stated as follows: Plaintiff contends that, as a tenant on the Tower, it had no duty to attend to the structural and maintenance issues that Defendant sets forth. Defendant counters that Plaintiff had a contractual duty to inform the Tower owner of certain known conditions (such as structural deficiencies) and that its failure to do so was a breach of that duty. The parties are both partially correct.

Plaintiff did not owe a duty *to* Defendant to maintain the structural integrity of the Tower, enclose or protect the mooring, or trim the foliage around the Tower's base *itself*. The License, which elsewhere Defendant argues severely restricts Plaintiff's ability to use the Tower, only allows Plaintiff access to its "Equipment Space," and only for the "transmission and reception of communications signals used for Personal Communications Services." (License ¶¶ 1, 7.) Any modification of the Plaintiff's Equipment on the Tower must first be approved by the Tower owner. (*Id.* ¶ 7(c).) Therefore, Plaintiff has no duty to maintain the Tower's structural integrity or the Tower's base area by its own actions, because Plaintiff likely would not be *allowed* to affect the Tower's integrity on its own or erect a fence around the mooring on its own. Because Plaintiff has no duty to do these things itself, it had no duty to Defendant in this regard, and was not contributorily negligent, as a matter of law, *as alleged by the Defendant in Defendant's Answer*.

Plaintiff did, however, appear to owe a duty to the Tower owner. The License provides that Plaintiff "shall notify [the owner] of any conditions on the Tower or on the Property, observed by Licensee which would require maintenance or repair by [the owner]." (License

¶ 10.) Furthermore, the Defendant contends that "industry standards" dictate that, regardless of the Plaintiff's explicit duties under the License, Plaintiff "should have insisted that the tower owner conduct . . . inspections." (Def.'s Opp'n to Pl.'s Mot. Partial Summ. J. 19, ECF No. 39 (quoting Westbrook Aff., ECF No. 39-1).) Even if Plaintiff could not have fixed the alleged problems regarding the Tower's structural integrity or base area itself, and even if Plaintiff owed no duty to the Defendant to do these things, Plaintiff may still have breached a duty to inform the Tower owner about known problems on or around the tower, and if Plaintiff's breach of that duty contributed to the harm that it suffered, Plaintiff could be contributorily negligent. *See Menish*, 356 A.2d at 235-36. Therefore, to the extent that Plaintiff requests the Court enter an order stating that Plaintiff was not contributorily negligent specifically for the reasons set forth in Defendant's Answer to Plaintiff's First Amended Complaint, the Court will grant the Plaintiff's Motion, but the Court today does not remove from the factfinder any determination that the Plaintiff was contributorily negligent.

IV.     *Conclusion*

As a matter of law, Plaintiff is not barred from recovering the Equipment Costs, Temporary Tower Costs, or Relocation Costs, and therefore Defendant's Motion will be denied. Whether Plaintiff is entitled to recover for the Equipment Costs, Temporary Tower Costs, or Relocation Costs depends on the resolution of issues of material fact that must be determined at trial, and therefore the Plaintiff's Motion Paragraph one (ECF No. 35, p. 1, ¶ 1) will be denied without prejudice. Plaintiff had no duty to, by its own actions, maintain the Tower, guide wires, or related equipment in good condition, protect the guide wire mooring post with a chain link fence or other enclosure, clear the area surrounding the guide wire and mooring post of overgrowth, or mark the location of the guide wire and mooring post. Therefore, Plaintiff's

Motion Paragraph two (ECF No. 35, p. 2, ¶ 2) will be granted. The Court makes no ruling with regard to whether Plaintiff may be contributorily negligent due to other actions or omissions. A separate order denying Defendant's motion and granting in part and denying in part Plaintiff's motion will be entered.

DATED this 21st day of September, 2017

                                                          BY THE COURT:

                                                          _____/s/_____
                                                          James K. Bredar
                                                          United States District Judge